PEETS & NORMAN COMPANY v. FREDERICK N. BAKER.

[48 South. 898.]

LANDLORD AND TENANT. *Agricultural products    Rent lien.    Code* 1906, § 2832. *Conversion of products.    Sale.    Shipping out of state.*

> The creditor of a tenant owing rent, receiving from him in this state agricultural products raised on the leased premises and subject to a statutory lien (Code 1906, § 2832) for rent, is liable to the landlord for the value of such products, not exceeding the unpaid rent, although the products were at once shipped by the creditor for the tenant out of the state to be there sold and credit was not given the tenant for their value until the proceeds of the sale in another state were received by the creditor.

FROM the circuit court of Copiah county.

HON. WILEY H. POTTER, Judge.

Baker, appellee, was plaintiff in the court below; Peets & Norman Company, appellant, was defendant there. From a judgment in plaintiff's favor defendant appealed to the supreme court. The facts are stated in the opinion of the court.

`R. N. & H. B. Miller,` for appellant.

It was fatal error to refuse instructions 1, 2 and 3 asked by the appellant and refused by the court below. These instructions told the jury that the lien of the landlord on agricultural products did not follow those products out of the state; and if they were sold out of the state the purchaser was not liable. The record shows that the appellant was merely the agent of Packer in the shipment of the tomatoes, and never purchased from him any tomatoes. *Ball v. Sledge,* 82 Miss. 749, 35 South. 477.

*H. J. Wilson,* for appellee.

[The brief of counsel for appellee was withdrawn or misplaced from the record before it reached the reporter.]

MAYES, J., delivered the opinion of the court.

This is a suit by Baker against Peets & Norman Company to recover the alleged value of 300 crates of tomatoes claimed to have been bought by Peets & Norman Company from one Packer. The claim of Baker grows out of a rental contract which he had with Packer for the lease of certain agricultural lands during the year 1907. The right attempted to be asserted against Peets & Norman Company is based on Code 1906, § 2832, whereunder is given to the landlord a lien on all the agricultural products grown on the leased premises, etc.

All of the witnesses in this case testify with great candor and fairness, and the facts are as follows, viz.: Baker, being the owner of certain lands in Copiah county, made a lease of same to Packer for the year 1907. Peets & Norman Company are merchants, and during the year furnished Packer, on open account, a considerable quantity of merchandise, largely exceeding in value the proceeds of tomatoes received by Peets & Norman Company from Packer. The crop made by Packer consisted altogether of tomatoes, and it is shown by Baker that Packer delivered the tomatoes grown on the land to Mr. Nor-

man, of the firm of Peets & Norman Company, without having discharged the debt owing for the rent, and Baker claims Peets & Norman Company converted these tomatoes and applied the proceeds of same to the payment of the debt which Packer owed him, thereby defeating his (Baker's) claim for rent; hence this suit for the conversion. It is agreed that Packer owes Baker a balance of $150 for rent for 1907 at the date of this suit.

Baker testified that he had a talk with Norman some time in June, and told him that Packer had not paid his rent, and that he would hold Peets & Norman Company responsible for the value of the tomatoes received by them. This is not disputed by Norman but Norman says that he thinks this conversation occurred about the close of the tomato season.

Dodds, the bookkeeper for Peets & Norman Company, testified that he had a conversation with Baker in reference to the Tom Packer tomatoes, that in such conversation Baker told him that the rents were not paid, but he does not think he mentioned what Baker said to Norman; that all during the time Peets & Norman Company were receiving the tomatoes from Packer he (Packer) was trading with them on open account, and was shipping the tomatoes through the firm of Peets & Norman Company; that the shipping began on the 28th day of May, and stopped about the 5th of July; and in answer to a direct interrogatory he was asked this question: "Q. What was the amount of tomatoes he (Packer) delivered to you? A. The total number of crates was 402, and the amount was $255.60. He owed something like $300 to the store at the beginning of the season. He delivered these tomatoes to be placed to this account." He further says that these tomatoes were delivered to, and they were shipped out of the state of Mississippi by, Peets & Norman Company, and sold in foreign markets.

Webster Millsaps testifies that he went with Baker to Peets & Norman Company's store and looked at the books to see if there was enough to pay the rent, and that at the time they went

there the books showed, according to his best recollection, that at the time of the notice Peets & Norman Company had then received from Packer tomatoes of the value of $154; that after Peets & Norman Company were notified they received from Packer other tomatoes of the value of about $100.

Packer, the tenant, testifies that he does not know exactly how many tomatoes he took to Peets & Norman Company, but that he brought them in there to Norman and took his receipts. He further says, in answer to the interrogatory as to whether or not there was any understanding between him and Norman about what to do with the proceeds of the sale, that he had an account there, and that Dodds, the bookkeeper, gave him credit on his account for the tomatoes shipped, and all the proceeds of the tomatoes shipped through Norman were applied to his account, and statements were rendered showing the amount they brought. On cross-examination he is asked the following questions, viz.: "Q. You turned over all your tomatoes to Norman that you raised? A. Yes, sir. Q. And the proceeds of the sale were applied to your account? A. Yes, sir. Q. You never saw a cent of the money? No, sir; but I always got the consignment receipts."

In Norman's testimony he states that Packer owed him an account amounting to $560.76, and when asked, "Q. How many tomatoes did you buy from him?" he answered: "A. I see three different shipments, amounting to $60. This was applied on his accounts, the tomatoes you see here. I believe in telling the truth about it. I can show you from our books. The tomatoes that were bought from Packer haven't been entered here. The tomatoes he grew on the Baker place were applied on his account, and those he sold for Lewis & Byrd were paid for at the time." Norman does not deny that the tomatoes were received to be applied to the account of Packer, as stated by Dodds, when the proceeds should be returned, and does not deny that he knew, at the time, that Packer was the tenant of Baker.

The facts constitute a conversion by Norman of the tomatoes

in this state, and he is estopped to deny that they were so converted. Baker is not seeking to recover as for a conversion against the purchaser of the tomatoes who bought outside of the state, but the suit is against one who converted, or gave active agency in this state in defeating the landlord's lien in order that he might convert the proceeds to the payment of the tenant's debt with him. After Norman had the conversation with Baker, when Baker told him that he would hold him for the value of the tomatoes, the testimony then shows that he received enough tomatoes from Packer to about discharge the debt owing to Baker for the crop year of 1907 for the leased premises. In other words, the uncontradicted testimony shows that Packer delivered the tomatoes to Norman to be placed on his account, and they were received with this understanding. The only thing remaining to be done by Norman was to ship them to the market and make the actual credit on the books, when the returns came back showing the amount of the proceeds. The tomatoes were taken to Norman with the intent to be applied to the account. They were received by Norman for this purpose, and shipped out of the state for the purpose of converting them into money, intending, at the time when the proceeds should come in, that they should be applied as a payment of Packer's debt. If these facts do not make Peets & Norman Company liable for a conversion of these tomatoes, the lien attempted to be given to landlords under section 2832 of the Code of 1906 is mythical.

In the face of these facts, showing active agency of Peets & Norman Company in this state looking towards a sale of these tomatoes outside of the state and an application of the proceeds to Packer's debt with them, the principle declared by the cases of *Ball v. Sledge,* 82 Miss. 749, 35 South. 214, and *Millsaps v. Tate,* 75 Miss. 150, 21 South. 663, have no application. The conversion of the agricultural products must take place outside of the state in order to make the principle applicable, and there must have been no active agency on the part of the person seeking to invoke the principle taking place in this state and looking

to a shipment out of the state.   In the cases of *Millsaps v. Tate,* 75 Miss. 150, 21 South. 663, *Easom v. Johnson,* 69 Miss. 371, 12 South. 446, and *Warren v. Jones,* 70 Miss. 202, 14 South. 25, this court held that one who has purchased or converted agricultural products, on which there is a landlord's lien, is liable to the landlord for the value thereof, whether the party purchasing or converting same has, or does not have, any knowledge of the fact that the lien exists.   If this be true, how can it ever be held that a creditor of a tenant, knowing that the tenancy exists, does not then and there so convert agricultural products as to make him liable for the proceeds thereof, when the facts show that he accepts the agricultural products in this state from the tenant, intending to apply the proceeds to the payment of the account, ships the agricultural products away for the tenant to enable him to convert them into money, has receipts sent back to himself, and credits the amount to the account of the tenant, merely rendering to him an account of the amount of the sales? Let us see if *Ball v. Sledge* or *Millsaps v. Tate* is authority for any such proposition.

In the case of *Ball v. Sledge,* 82 Miss. 747, 35 South. 214, there was no controversy involving the rights of a landlord, except incidentally.   There was no landlord in that case at all. The facts show that Sledge rented lands in this state from one Williamson for the year 1900 and agreed to pay $150 as rent. Afterwards Sledge gave a deed of trust to Ball, who was a merchant living in Memphis, on his crop and some live stock, etc., for advances to be made him by them for the year 1900. Ball knew of Sledge's lease contract with Williamson, and paid Williamson Sledge's rent for the year.   At the end of the year Sledge failed to pay Ball for the advances made him, and early in 1901 Ball sent his agent into Mississippi to see Sledge, who then owed a balance of $295 on account and the $150 for rent that Ball had paid to Williamson for him.   A settlement was agreed upon between the agent of Ball and Sledge, whereby certain personal property was turned over by Sledge to be sold for

the purpose of paying the debt. Accordingly the property was sold and the proceeds applied to the payment of the account alone, the agent at the time overlooking the amount that had been paid for Sledge to Williamson as rent, and the agent turned over a little surplus to Sledge. The mistake was shortly discovered, and, as Sledge declined to rectify it, an action of replevin was instituted under the deed of trust to recover from Sledge the property under the deed of trust for the purpose of satisfying this indebtedness. Sledge defended on the idea that the deed of trust did not cover the rent paid to Williamson by Ball for him, and the court so instructed. On the other hand, Ball sought to fix liability on Sledge under the deed of trust by asking the court to instruct the jury that though they believed Sledge shipped cotton to him in Memphis, and there sold it to him, still if they believed that the cotton was subject to the landlord's lien of Williamson, and that Ball had actual knowledge of this fact, and discharged the lien, the cotton having been shipped to Ball either because of the contract had by Ball with Sledge, or because of demand made for the shipment of the cotton, then they should find Sledge liable under the deed of trust. The case was decided for Ball on another ground, but the court said as to this instruction that it should have been refused, saying: "It was decided in *Millsaps v. Tate,* 75 Miss. 150, 21 South. 663, upon a case strikingly similar to the one here presented, that the lien granted landlords by our law did not attach to cotton shipped out of the state, and the purchaser was not liable, even where he has actual notice of the existence of the lien. The fact that appellants paid the landlord a portion of the proceeds of cotton received beyond the confines of the state does not alter the controlling legal principles. The record does not show that the payment was made by the direction of the tenant, and appellants in this case are not asserting any rights as assignees of the landlord." This case shows that Ball was attempting by this instruction to be subrogated to the rights of the landlord in regard to the lien, even though the purchase had been made outside of

the state, and the court properly held that this could not be done, both because the sale was made outside the state and because Ball had not attempted to assert any rights against Sledge as assignee of Williamson.    It is thus seen that the *Ball case* is no authority under the facts of this case.

The *Millsaps case,* in 75 Miss. 150, 21 South. 663, is equally without application to the facts of this case.    Millsaps owned a plantation in Washington county, Miss., and leased same for the year 1893.    Tate lived in Memphis, Tenn., and the tenants executed to him a deed of trust on the crops to be grown on the leased premises during the year.    In the fall the tenants shipped the cotton to Tate in Memphis, and Tate then sold and applied the proceeds to his indebtedness, and the rent was left unpaid. The record does not show that Tate was ever in the state, and it nowhere appears that the tenants delivered to him any of the cotton within the limits of the state of Mississippi.    Millsaps sued Tate, and the court said that the lien stopped at the state line under the facts of this case.    It was further argued in this case that the mere fact that Tate took a deed of trust on the cotton to be grown by the tenants on the leased premises for the year 1893, stipulating that the tenant should ship to Tate all the agricultural products raised on the leased premises, fixed fraudulent and unlawful participation on the part of Tate, and the court said that this act alone would not render Tate liable, and additionally said: "Appellees had no agency in shipping the cotton out of this state.    They did not order it done.    They did not know it had been shipped at all, until notified by the railroad company of its arrival.    As a matter of fact, they did not know that the landlord's claim for rent had not been fully paid, and they did not know the cotton was raised on the leased premises." Now, all these things, which the court said Tate did not know, Peets & Norman Company did know.    Peets & Norman Company did have an agency in shipping the tomatoes out of the state.    All their assistance in accomplishing this was given within the state.    They knew that the landlord's rent had not been

paid, and they knew that the tomatoes were raised on the leased premises. They shipped them away in order to apply the proceeds to their debt, and when the returns came they did apply it to their debt and cut out the landlord.

In the case of *Hernandez v. Aaron,* 73 Miss. 434, 16 South. 910, it was held that, when cotton liable under a deed of trust was shipped and sold to a party outside of the state, such party was not liable to the holder of the lien, and it was said, further: "Appellant was not aware of this shipment when it was made, nor was he informed of appellee's liens under his trust deeds until after the cotton had been sold in New Orleans. He did not receive the cotton at all in Wilkinson county." It will be noted that the court was very careful to state that none of the cotton was received by the purchaser in this state; for, if it had been, there would undoubtedly have been a liability. Almost identical in its holding is the case of *Chism v. Thomson,* 73 Miss. 410, 19 South. 210.

If there can ever arise under the statute any case where a creditor of a tenant can be made liable to the landlord for the rent, where it is not shown that the creditor actually took the products themselves at an agreed valuation at the time, though in truth and in fact he converted and intended to convert the products to his own use at the time he received them, this is the case.

*Affirmed.*